CELESTE G. BROUGHTON, Plaintiff v. McCLATCHY NEWSPAPERS, INC.;
THE NEWS AND OBSERVER PUBLISHING CO.; et al., Defendants

No. COA02-1034

(Filed 4 November 2003)

**1. Pleadings— motion to strike untimely answer—no entry of default**

There was no abuse of discretion in the denial of plaintiff's motion to strike defendant's untimely answer in a libel action where default was never entered.

**2. Libel and Slander— libel per se—statements with more than one interpretation**

To be libelous on their face, statements must be subject to one interpretation only, and that interpretation must be defamatory. The trial court here did not err by denying plaintiff's motion for summary judgment (and properly granted defendant's) on plaintiff's claim for libel per se based on a newspaper article because the statements complained of by plaintiff did not meet that requirement.

### 3. Privacy— invasion of—newspaper writer—interviews and public records

Defendant's conduct in gathering information for a newspaper article did not rise to the level of invasion of privacy, and the trial court did not err by denying summary judgment for plaintiff or by granting it for defendant. There was no evidence of physical or sensory intrusion or prying into confidential personal records.

### 4. Libel and Slander— slander—newspaper article—true statements

Summary judgment was correctly granted for defendants and denied for plaintiff on a slander claim arising from a newspaper article where the pertinent statements were true. Moreover, plaintiff did not show damages.

### 5. Fraud— newspaper reporter—representations—no reliance by plaintiff

Plaintiff's claim for fraud and misrepresentation against a newspaper and a reporter lacked the essential element of reliance, and summary judgment was correctly granted against plaintiff and for defendant.

### 6. Trespass— unannounced visit by reporter—entry not unauthorized

The trial court properly granted summary judgment for defendants on a trespass claim (and properly denied summary judgment for plaintiff) arising from a newspaper article where plaintiff complained that defendant reporter came to her house unannounced but did not show that the reporter's entry was unauthorized.

### 7. Torts, Other— obstruction of justice—no impedance of lawsuit—summary judgment

There was no evidence that plaintiff's case was prevented, obstructed, or hindered by defendant reporter's newspaper article about her domestic action, and summary judgment was properly granted for defendants on plaintiff's claim for obstruction of justice.

### 8. Civil Procedure— summary judgment—motions for amended judgment or new trial

The provisions of Rule 52 of the North Carolina Rules of Civil Procedure under which a party may move for amended or addi-

tional findings and an amended judgment are not applicable to summary judgment. The trial court's decision on a Rule 59 request for a new trial is not reviewable absent an abuse of discretion, which was not shown in this case.

Appeal by plaintiff from orders entered 23 October 1997 by Judge Orlando F. Hudson, Jr.; 21 October 1998 by Judge Robert Farmer; 18 December 1998 by Judge B. Craig Ellis; 20 April 1999 by Judge E. Lynn Johnson; 11 August 1999 by Judge Howard E. Manning, Jr.; 8 June 2001 by Judge Howard E. Manning, Jr.; and 3 July 2001 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 18 August 2003.

*Celeste G. Broughton, pro se.*

*Everett Gaskins Hancock & Stevens, LLP, by Hugh Stevens and C. Amanda Martin, for defendants-appellees.*

STEELMAN, Judge.

This appeal arises from a lawsuit initiated by plaintiff, Celeste G. Broughton, against defendants, McClatchy Newspaper, Inc., The News and Observer Publishing Company, Frank A. Daniels, Jr., individually and as president of the News and Observer Publishing Company and as publisher of the News and Observer (N&O), Anders Gyllenhaal, individually and as editor of the N&O, and Sarah Avery, individually and as a staff writer for the N&O. This action was dismissed by Judge Howard E. Manning, Jr. For the reasons discussed herein, we affirm.

Plaintiff and Robert Broughton were married on 5 December 1964. The Broughtons separated on 25 November 1968. Since that time, they have been involved in litigation. In 1995, defendant Sarah Avery (Avery) became interested in the Broughtons' protracted litigation. Avery researched court files and conducted interviews for an article to be published in the N&O. On 3 December 1995, the article was published in the N&O. It was titled "Lawsuit in Superior Court Latest Volley in Broughtons' War," and included references to the Broughtons' marriage, plaintiff's financial status, and ongoing and past litigation. On 2 December 1996, plaintiff filed a complaint alleging libel *per se*, invasion of privacy, fraud and misrepresentation, slander of title, and obstruction of justice.

On 4 February 1997 defendants filed a motion for a more definite statement, a motion to strike portions of plaintiff's complaint, and a

provisional answer. The trial court granted both of defendants' motions on 21 April 1997 and directed plaintiff to file and serve an "amended complaint" on or before 19 May 1997. On 12 May 1997, plaintiff obtained an *ex parte* order granting an extension of time to serve her "amended complaint" until 3 June 1997. Plaintiff filed a document designated as an "amended complaint" on 3 June 1997. Defendants filed an answer to the amended complaint on 3 July 1997. On 7 July 1997, plaintiff moved to strike defendants' answer and for entry of default. Both of these motions were denied by Judge Orlando F. Hudson, Jr. on 23 October 1997.

Following contentious discovery, all parties moved for summary judgment. Judge Howard E. Manning, Jr. denied plaintiff's motion for summary judgment on 11 August 1999. He granted defendants' motion for summary judgment on 8 June 2001 in an order that set forth, in detail, the rationale of the court's ruling.

On 18 June 2001, plaintiff filed a motion under Rules 52 and 59(a)(7) requesting that the trial court reconsider its 8 June 2001 decision. The motion alleged that the trial court's order, which granted defendants' motion for summary judgment, contained errors of law and fact. On 3 July 2001, Judge Manning denied the motions under Rules 52 and 59(a)(7). Plaintiff's motion for reconsideration was allowed, but the trial court declined to change its decision. Plaintiff appeals all of these orders, but does not discuss the 21 October 1998 order by Judge Robert Farmer, the 18 December 1998 order by Judge B. Craig Ellis, or the 20 April 1999 order by Judge E. Lynn Johnson in her brief. Assignments of error as to these orders are deemed abandoned and are not addressed further. *See* N.C. R. App. P. 28(b)(6). Plaintiff sets forth four assignments of error.

**[1]** In her first assignment of error, plaintiff argues that the trial court erred by denying her motion to strike defendants' answer and motion for entry of default. She contends that because defendants' answer was not filed in a timely manner, the trial court was required to enter default. We disagree.

Plaintiff filed her complaint on 2 December 1996. Defendants moved for a more definite statement on 4 February 1997. The trial court's 5 May 1997 order granted defendants' motion and directed that plaintiff serve an "amended complaint" upon defendants. "If the court grants a motion for a more definite statement, the responsive pleading shall be served within 20 days after service of the more definite statement." N.C.R. Civ. P. 12(a)(1)(b). Plaintiff served her

amended complaint by mail on 3 June 1997. Defendants, therefore, had until 26 June 1997 to file a response. *See* N.C.R. Civ. P. 6(e). Defendants did not file an answer to the amended complaint until 3 July 1997.

Plaintiff presented an affidavit and a proposed order entering default to the Clerk of Superior Court of Wake County on 2 July 1997. The clerk did not enter default against defendants. Defendants filed an answer to the amended complaint on 3 July 1997. Plaintiff moved to strike the answer and for entry of default on 7 July 1997. Defendants responded to plaintiff's motions, contending that under Rule 15(a), they were allowed 30 days to answer an "amended pleading."

Rule 15(a) provides that "[a] party shall plead in response to an amended pleading within 30 days after service of the amended pleading, unless the court otherwise orders." N.C.R. Civ. P. 15(a). However, Rule 15 applies to amended and supplemental pleadings in general. Rule 12(a)(1)(b) specifically applies to responses to a more definite statement. N.C.R. Civ. P. 12(a)(1)(b). When a more generally applicable statute conflicts with a more specific, special statute, the "special statute is viewed as an exception to the provisions of the general statute[.]" *Domestic Electric Service, Inc. v. City of Rocky Mount*, 20 N.C. App. 347, 350, 201 S.E.2d 508, 510, *aff'd*, 285 N.C. 135, 203 S.E.2d 838 (1974). Accordingly, we conclude that the specific requirements of Rule 12(a)(1)(b) control where in conflict with the general requirements of Rule 15(a).

Plaintiff moved to strike defendants' answer pursuant to Rule 55, which provides:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or is otherwise subject to default judgment as provided by these rules or by statute and that fact is made to appear by affidavit, motion of attorney for the plaintiff, or otherwise, the clerk *shall* enter his default.

N.C.R. Civ. P. 55(a) (Emphasis added).

Default judgments are disfavored in the law, and therefore any doubts should be resolved in favor of allowing the case to proceed on the merits. *North Carolina Nat'l Bank v. McKee*, 63 N.C. App. 58, 303 S.E.2d 842 (1983). In *Peebles v. Moore*, 302 N.C. 351, 275 S.E.2d 833 (1981), the defendant filed an untimely answer. After the answer was filed, the clerk entered a default against the defendant. The trial

court refused to set aside the entry of default. Our Supreme Court reversed, holding that once an answer has been filed, default may not be entered, even though the answer was late. The court further stated that:

> We believe that the better reasoned and more equitable result may be reached by adhering to the principle that a default should not be entered, even though technical default is clear, if justice may be served otherwise. . . . Without considering the questions of just cause, excusable neglect or waiver, we conclude that justice will be served by vacating the entry of default and permitting the parties to litigate the joined issues.

*Id.* at 356, 275 S.E.2d at 836.

In the instant case, unlike *Peebles*, there was never an entry of default. Clearly, defendants' answer was not timely filed. However, when an answer is filed before default is entered, the clerk is no longer authorized to enter default against defendants. *See Peebles, supra; Fieldcrest Cannon Employees Credit Union v. Mabes*, 116 N.C. App. 351, 447 S.E.2d 510 (1994).

A motion to strike an answer is addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of discretion. *Byrd v. Mortenson*, 308 N.C. 536, 302 S.E.2d 809 (1983). Defendants had previously filed a provisional answer to plaintiff's complaint on 4 February 1997. It is clear from the record that defendants believed that since plaintiff filed an "amended complaint," they had 30 days to file a response. Defendants did, in fact, file an answer, albeit late by several days. Further, there was no showing that plaintiff was prejudiced by the late answer. The denial of plaintiff's motion to strike was not an abuse of discretion.

It is preferable for matters to be resolved on their merits rather than upon a procedural defect. *Hardison v. Williams*, 21 N.C. App. 670, 205 S.E.2d 551 (1974). The interests of justice in this case were served by the trial court's denial of plaintiff's motion to strike. *See Peebles, supra*. This assignment of error is without merit.

[2] In plaintiff's second and third assignments of error, she argues that the trial court erred in denying her motion for summary judgment and granting defendants' motion for summary judgment concerning her claims for libel *per se*, invasion of privacy, slander of title, fraud and misrepresentation, trespass and obstruction of justice. We disagree.

BROUGHTON v. McCLATCHY NEWSPAPERS, INC.

[161 N.C. App. 20 (2003)]

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). The moving party bears the burden of demonstrating the lack of triable issues of fact. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). Once the movant satisfies its burden of proof, the burden then shifts to the non-movant to present specific facts showing triable issues of material fact. *Lowe v. Bradford*, 305 N.C. 366, 369-70, 289 S.E.2d 363, 366 (1982). On appeal from summary judgment, "we review the record in the light most favorable to the non-moving party." *Bradley v. Hidden Valley Transp., Inc.*, 148 N.C. App. 163, 165, 557 S.E.2d 610, 612 (2001), *aff'd*, 355 N.C. 485, 562 S.E.2d 422 (2002) (citing *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975)).

Where a plaintiff cannot prove an essential element of her claim, summary judgment is proper. *Martin Marietta Corp. v. Wake Stone Corp.*, 111 N.C. App. 269, 432 S.E.2d 428 (1993), *rev. denied*, 335 N.C. 770, 442 S.E.2d 517 (1994). Summary judgment can be appropriate in libel cases. *See Taylor v. Greensboro News Co.*, 57 N.C. App. 426, 435, 291 S.E.2d 852, 857 (1982), *appeal dismissed*, 307 N.C. 459, 298 S.E.2d 385 (1983).

Whether a publication is deemed libelous *per se* is a question of law to be decided by the court. *Ellis v. Northern Star Co.*, 326 N.C. 219, 224, 388 S.E.2d 127, 130, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 89 (1990). "[D]efamatory words to be libelous *per se* must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." *Flake v. Greensboro News Co.*, 212 N.C. 780, 786, 195 S.E. 55, 60 (1937).

Plaintiff alleged in her complaint that the actions by defendants constituted libel *per se*. There are no allegations of any other type of libel. Libel *per se* is "a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Phillips v. Winston-Salem/Forsyth County*

*Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), *disc. rev. denied*, 340 N.C. 115, 456 S.E.2d 318 (1995). The first three types of libel *per se* are not applicable to this case.

Paragraph 17 of plaintiff's complaint reads as follows:

Such publications (Exhibits A, B and C)—each separately and also taken as a whole—were intended to convey and did convey to the community at large the impression that plaintiff was mean-spirited, greedy, and buffoonishly litigious, and that no one—especially lawyers and judges—should take her legal allegations or other activities seriously. By such publication, defendants meant and intended to mean:

Plaintiff then enumerated in seventy-eight separately numbered subparagraphs what she interpreted defendants meant and intended to mean in the newspaper articles. The articles complained of were: (1) the original story which ran on 3 December 1995 (Exhibit A); (2) three letters to the editor which discussed the original story; and (3) an article dated 10 December 1996 reporting that plaintiff had sued defendants in the instant action.

The original story (Exhibit A) was titled, "Lawsuit in Superior Court latest volley in Broughtons' war." The fourth paragraph states: "Convinced that her husband would use his power and influence to ruin her, [plaintiff] took to the courts to fight for what she said was rightfully due her and her children—a just division of the property he controlled during their marriage. She is still fighting." The article then states that plaintiff is known by her first name only at the Wake County Courthouse because she has been a party to at least "two dozen lawsuits, complaints and criminal actions involving her lawyers, her ex-husband's lawyers, state and federal judges, district attorneys, The News and Observer and the Internal Revenue Service." The article comments on plaintiff's $4.2 million-dollar lawsuit against Robert Broughton, their marriage and subsequent divorce, plaintiff's attempts to obtain money for her children's educations from Robert Broughton, affidavits filed in lawsuits between the parties, how plaintiff began to act *pro se* because she could no longer afford to hire attorneys, and Robert Broughton's estrangement from his children.

Plaintiff has misconstrued the article and read into it interpretations that are simply not there. Her complaint refers to what defendants "meant and intended to mean" in the article. This is not the test for libel *per se*. In *Renwick v. News & Observer Pub. Co.*, 310 N.C.

312, 318, 312 S.E.2d 405, 409, *reh'g denied,* 310 N.C. 749, 315 S.E.2d 704, *cert. denied,* 469 U.S. 858, 83 L. Ed. 2d 121 (1984), our Supreme Court stated:

> The principle of common sense requires that courts shall understand them as other people would. The question always is how would ordinary men naturally understand the publication. . . . The fact that supersensitive persons with morbid imaginations may be able, by reading between the lines of an article, to discover some defamatory meaning therein is not sufficient to make them libelous.
>
> In determining whether the article is libelous *per se* the article alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The article must be defamatory on its face "within the four corners thereof."

(Quoting *Flake v. Greensboro News Co.*, 212 N.C. at 786-87, 195 S.E. at 60). Here, plaintiff complains only of insinuations and innuendos by alleging what defendants intended to mean.

In opposition to defendants' motion for summary judgment, plaintiff submitted the affidavits of three persons, together with her own affidavit, that stated how they perceived the article made plaintiff appear. Regardless of whether a libel case is resolved upon a motion for summary judgment or by a jury trial, the trial court is required to make a threshold determination of whether the statement is libelous on its face. *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 312 S.E.2d 405 (1984); *Robinson v. Nationwide Ins. Co.*, 273 N.C. 391, 159 S.E.2d 896 (1968); *Flake v. News Co.*, 212 N.C. 780, 195 S.E. 55 (1938). In order to be libelous on its face, the statements must be subject to only one interpretation, which must be defamatory. *Martin Marietta Corp. v. Wake Stone Corp.*, 111 N.C. App. 269, 432 S.E.2d 428 (1993). The statements complained of by plaintiff are not susceptible of only one defamatory meaning as a matter of law. The trial court correctly determined that "as a matter of law, the article is not libelous per se." Consequently, we hold that the trial court did not err, but properly granted defendant's summary judgment motion and properly denied plaintiff's summary judgment motion on the libel *per se* issue.

[3] In addition to her claim for libel, plaintiff asserts a claim for invasion of privacy. There are four types of invasion of privacy actions: "(1) appropriation, for the defendant's advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's seclusion or soli-

**BROUGHTON v. McCLATCHY NEWSPAPERS, INC.**

[161 N.C. App. 20 (2003)]

tude or into his private affairs; (3) public disclosure of embarrassing private facts about the plaintiff; and (4) publicity which places the plaintiff in a false light in the public eye." *Renwick*, 310 at 322, 312 S.E.2d at 411.

Plaintiff has not alleged a claim for appropriation of her name or likeness. North Carolina does not recognize a cause of action for the invasion of privacy by disclosure of private facts. *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4, *reh'g denied*, 355 N.C. 224, 559 S.E.2d 554 (2001) (citing *Hall v. Post*, 323 N.C. 259, 372 S.E.2d 711 (1988), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988)). Neither does North Carolina recognize a cause of action for false light in the public eye invasion of privacy. *Renwick, supra.* Thus, the only possible invasion of privacy claim that can be brought by plaintiff is one for intrusion.

Generally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion. *Burgess v. Busby, supra; See also Toomer v. Garrett*, 155 N.C. App. 462, 574 S.E.2d 76 (2002), *rev. denied, appeal dismissed*, 357 N.C. 66, 579 S.E.2d 576 (2003).

> We have held that " 'intrusion' as an invasion of privacy is [a tort that] . . . does not depend upon any publicity given a plaintiff or his affairs but generally consists of an intentional physical or sensory interference with, or prying into, a person's solitude or seclusion or his private affairs." *Hall v. Post*, 85 N.C. App. 610, 615, 355 S.E.2d 819, 823 (1987). Specific examples of intrusion include "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another."

*Burgess*, 142 N.C. App. at 405-06, 544 S.E.2d at 11 (citing *Hall v. Post*, 85 N.C. App. 610, 615, 355 S.E.2d 819, 823 (1987), *reversed on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988)). The conduct required to support this claim must be so egregious as to be "highly offensive to a reasonable person." *Smith v. Jack Eckerd Corp.*, 101 N.C. App. 566, 568, 400 S.E.2d 99, 100 (1991).

The allegations in paragraph 17 of plaintiff's complaint pertaining to intrusion of privacy are as follows:

> 17. (40) False and defamatory allegation about the most private and personal matters of plaintiff's family's life is acceptable for

publication, even over her explicit protest, although plaintiff is not a public figure and the defendants and their said publications clearly convey that the matters published were deliberately contrived to be tedious, unnewsworthy trivia and grossly invade plaintiff's and her sons' privacy.

35. Plaintiff repeatedly asked Avery not to publish any article about the plaintiff or the case, as any article would be an unwarranted invasion of her family's privacy and also would inevitably jeopardize the outcome of the case Wake County 88 CVS 6157.

58. Since the matters written about were private, plaintiff is not a public figure, the public is not interested in those matters, the account of the matters was incomplete and accordingly inaccurate (if not outright falsehoods), the publication unlawfully invaded plaintiff's privacy.

63. Even if all the individual statements in subject article were true, the article would yet be libelous, slanderous of title, invasive of privacy and obstruct just resolution of the referred "lawsuit in superior court", since article omits relevant information about the plaintiff and other matters it purports to accurately report. [Sic].

In this case, defendants investigated *public* records and conducted interviews of persons to acquire information for the article. There can be no invasion of privacy claim based upon the use of public records as to which plaintiff had no expectation of privacy. *Burgess*, 142 N.C. App. at 406, 544 S.E.2d at 11. There was no evidence of physical or sensory intrusion or of prying into confidential personal records. The conduct of defendants in the gathering of information for its articles does not rise to a level that would support a claim for invasion of privacy by intrusion. Accordingly, we hold that the trial court properly denied plaintiff's summary judgment motion and granted defendants' motion for summary judgment as to the claim for invasion of privacy.

[4] Plaintiff also contends that defendants committed slander of title. The elements of slander of title are: (1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages. *Mecimore v. Cothren*, 109 N.C. App. 650, 655-56, 428 S.E.2d 470, 473, *rev. denied*, 334 N.C. 621, 435 S.E.2d 336 (1993) (citing *Allen v. Duvall*, 63 N.C. App. 342, 345, 304 S.E.2d 789, 791 (1983), *rev'd on other grounds*, 311 N.C. 245, 316 S.E.2d 267 (1984)).

The article of 3 December 1995 contains the following statements concerning plaintiff's residence:

> The house sits on a hill, looking down through a forest of tall oaks at the grand old-money homes to the left and right. . . .

> Celeste Broughton long ago put the house on the hill in a trust for her children, saying in court papers that it would be the only nest-egg they would ever have. And while the three acres span some of the most desirable real estate in Raleigh—easily worth several times the $400,000 tax value—the 3,500 square foot house shows signs of age. A gray mildew climbs the six columns that establish its grand front.

> Still, she refuses to sell the house and subdivide the land. It's the principle of the matter. Why, she demands, should she sacrifice the only home her children have ever known because they are owed what she considers a legal and binding debt?

The materials presented to the trial court upon the summary judgment hearing reveal that the title to the property is in fact held in trust for plaintiff's children. This statement was not false. The evidence further showed that the remaining allegations pertaining to plaintiff's real property were not false. In addition, plaintiff has not shown any damages. In the absence of an essential element of the cause of action, summary judgment is proper. *Lavelle v. Schultz*, 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995), *disc. rev. denied*, 342 N.C. 656, 467 S.E.2d 715 (1996). We therefore hold that the trial court correctly granted summary judgment in favor of defendants and denied plaintiff's motion for summary judgment on this claim.

[5] Plaintiff further contends that defendants committed fraud and misrepresentation by telling her that the article would be "sympathetic" to her interests. To establish a claim for fraud, plaintiff must show that: (1) defendants made a representation of a material past or existing fact; (2) the representation was false; (3) defendants knew the representation was false or made it recklessly without regard to its truth or falsity; (4) the representation was made with the intention that it would be relied upon; (5) plaintiff did rely on it and that her reliance was reasonable; and (6) plaintiff suffered damages because of her reliance. *Blanchfield v. Soden*, 95 N.C. App. 191, 194, 381 S.E.2d 863, 864, *rev. denied*, 325 N.C. 704, 388 S.E.2d 448 (1989).

In plaintiff's deposition, however, she stated that:

I've made it a policy all—for the last many, many years to never talk to anyone who works with *The News and Observer*, to avoid them socially, have nothing to do with them, to not even go near them in the grocery store. . . . I've learned that people—especially people who work for *The News and Observer*—lie glibly.

Based on plaintiff's own statements, she did not rely on any statements that might have been made by defendants. Because an essential element is missing from plaintiff's claim, summary judgment was proper. *Lavelle v. Schultz*, 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995), *disc. rev. denied*, 342 N.C. 656, 467 S.E.2d 715 (1996). The trial court properly denied plaintiff's motion and granted defendants' motion for summary judgment as to this claim.

[6] Plaintiff contends that defendant Avery trespassed on her property when she came to plaintiff's residence unannounced. The elements of trespass to real property are: (1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass. *Kuykendall v. Turner*, 61 N.C. App. 638, 642, 301 S.E.2d 715, 718 (1983).

Plaintiff alleged that defendant Avery trespassed when the following happened:

36. A day or so after that conversation, Avery appeared unannounced at plaintiff's residence and stated that she had come solely for a "social visit". Plaintiff had never seen the woman before in her life.

37. Plaintiff feared the N&O's often demonstrated proclivity and reputation for vindictively destroying people and, consequently, plaintiff did not want to appear rude by refusing to "socially" visit with Avery.

38. As a result of that fear, plaintiff talked for some time "socially" with Avery on plaintiff's front porch.

39. After having made the fraudulent misrepresentation that she was "socially" visiting, Avery later, in her article of December 3, 1995, rewarded plaintiff's hospitality by cruelly invading plaintiff's privacy, including writing viciously unflattering description of plaintiff's residence and alleging the property has a high market value. [sic].

Plaintiff has not shown or alleged that Avery's entry onto her land was unauthorized. To the contrary, the evidence was that plaintiff engaged in "social" conversation with Avery and did not ask her to leave the property. Thus, the trial court properly granted summary judgment for defendants and denied summary judgment for plaintiff on the trespass claim.

[7] Plaintiff next contends that the trial court erred in dismissing her claim for obstruction of justice. For example, paragraph 70 of the amended complaint states that "[p]laintiff has suffered obstruction of a just resolution of pending court actions, Case number 88 CVS 6157 (Wake County)."

"Obstruction of justice is a common law offense in North Carolina." *Burgess*, 142 N.C. App. at 408, 544 S.E.2d at 12. "[I]t is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice. *Id.* at 408-09, 544 S.E.2d at 12-13. However, plaintiff presented no evidence that her case, 88 CVS 6157, was in some way judicially prevented, obstructed, impeded or hindered by the acts of defendants. There is no evidence as to the disposition of that action or any showing that the newspaper articles adversely impacted that case.

As to each of plaintiff's claims, the trial court properly granted summary judgment in favor of defendants and properly denied plaintiff's motion for summary judgment. These assignments of error are without merit.

[8] In her fourth and final assignment of error, plaintiff argues that the trial court erred in denying her motions under Rules 52 and 59(a)(7), filed following the trial court's granting of defendants' motion for summary judgment. We disagree.

Rule 52 provides that a party may move for the trial court to amend its findings, make additional findings or amend its judgment. N.C.R. Civ. P. 52. However, these provisions are not applicable to an order granting summary judgment.

A trial judge is not required to make finding of fact and conclusions of law in determining a motion for summary judgment, and if he does make some, they are disregarded on appeal. [Sic]. Rule 52(a)(2) does not apply to the decision on a summary judgment motion because, if findings of fact are necessary to resolve an issue, summary judgment is improper.

*Mosley v. National Finance Co.*, 36 N.C. App. 109, 111, 243 S.E.2d 145, 147 (1978) (citations omitted). In this case, the trial court did not enter findings of fact and conclusions of law, but rather carefully and in detail stated the legal basis for each of its rulings.

Rule 59(a)(7) provides that a party may request a new trial based upon "[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law." N.C.R. Civ. P. 59(a)(7). The trial court's decision on a Rule 59 motion is not reviewable on appeal absent manifest abuse of discretion. *Thomas v. Dixson*, 88 N.C. App. 337, 363 S.E.2d 209 (1988). Plaintiff has not shown an abuse of discretion. As discussed above, the trial court did not err in denying plaintiff's motion for summary judgment or granting defendants' motion for summary judgment. This assignment of error is without merit.

AFFIRMED.

Chief Judge EAGLES and Judge TYSON concur.