LUDOVICUS N. KEYZER, a/k/a LUDO KEYZER, Plaintiff,
v.
AMERLINK, LTD. and RICHARD SPOOR, Defendants.
No. COA04-1095
North Carolina Court of Appeals
Filed August 16, 2005
This case not for publication
Nash County No. 02 CVS 2461.
Barry Nakell for plaintiff-appellant.
Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence, for defendant-appellees.
LEVINSON, Judge.
Plaintiff Ludovicus Keyzer ("Keyzer") appeals from orders granting summary judgment for defendants on plaintiff's claims of fraud, unfair or deceptive trade practices, and punitive damages, and denying plaintiff's motion for post-trial relief. We affirm.
AmerLink, Ltd. ("AmerLink") is a corporation that does business in North Carolina selling log home kits. Keyzer is a Dutch citizen and resident of the Netherlands who purchased a log home kit from AmerLink. On 22 February 1999 plaintiff filed suit against Amerlink for breach of contract, breach of express and implied warranties, fraud, and unfair and deceptive trade practices, all pertaining to the log home package. On 12 September 2001, after nine days of trial, the parties executed a settlement agreement. The present appeal arises from this settlement agreement, and does not concern the merits of plaintiff's original suit.
The settlement agreement generally provided that defendants would make two payments to plaintiff totaling $200,000, that plaintiff would release defendants from liability on all claims arising from the log home sale, and that neither party would disclose the terms of the settlement contract. Specific provisions included the following:
1. . . . Amerlink, Ltd. will pay by bank check the initial lump sum of $50,000.00 . . . on or before . . . September 12, 2001. Upon receipt of the check, Plaintiff . . . [will execute a] release that is contingent upon completion of the payment term.
2. . . . [Defendant] will pay to Plaintiff . . . $150,000.00, plus accrued interest at a rate of eight percent (8%) . . . on or before November 30, 2002 . . . and time is of the essence. . . . Richard Spoor, President of AmerLink, Ltd. personally guarantees the payment.
3. The parties agree to keep confidential the terms, conditions and amount of the settlement and if either party is approached by a third party about the matter they will simply respond by saying, "the matter has been resolved to the satisfaction of the parties."
. . . .
5. . . . [I]f AmerLink, Ltd. fails to make payments as outlined above, the Plaintiff may re-file his lawsuit without prejudice to any previous judicial orders. . . .
. . . .
11. The undersigned further agree that if a breach of any of the provisions of this agreement and release occurs then the non-breaching party has the right to bring suit to recover damages against the breaching party[.] . . .
. . . .
As of 30 November 2002 defendants had not made the final payment to plaintiff of $150,000. On 4 December 2002 plaintiff filed suit against defendants for breach of contract, fraud, and unfair or deceptive trade practices. Plaintiff later filed an amended complaint adding an allegation that defendants had breached the settlement's confidentiality clause. On 3 December 2003 defendants filed a motion for summary judgment.
On 12 February 2004 the trial court entered an order granting summary judgment in favor of plaintiff on the issue of defendants' breach of the settlement contract's payment provision, and ordering defendants to pay plaintiff $150,000 plus interest. Defendants have not appealed this ruling. The court also granted summary judgment for defendants on plaintiff's claims of fraud, unfair or deceptive trade practices, and punitive damages. Plaintiff filed a motion seeking a new trial, amended judgment, or relief from judgment, which motion was denied by the trial court on 13 April 2004. Plaintiff timely appealed from the summary judgment order and the order denying his post-trial motion.

Standard of Review
Preliminarily, we note that this is a companion case to Keyzer v. Amerlink (COA04-1096). We also note that, although plaintiff appealed from the trial court's order denying his post-trial motion, his brief does not present any arguments addressing this order. Accordingly, the issue is deemed abandoned. N.C. R. App. P. 28(a) ("Questions raised by assignments of error . . . but not then presented and discussed in a party's brief, are deemed abandoned.").
Under N.C.G.S. § 1A-1, Rule 56(c) (2003), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." "The burden is on the party moving for summary judgment to show the absence of any genuine issue of fact and his entitlement to judgment as a matter of law. `The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim.'" Bolick v. Bon Worth, Inc., 150 N.C. App. 428, 429-30, 562 S.E.2d 602, 603 (2002) (citing Savings & Loan Assoc. v. Trust Co., 282 N.C. 44, 191 S.E.2d 683 (1972), and quoting Roumillat v. Simplistic Enterprises, Inc., 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992)). When the movant properly supports his motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." N.C.G.S. § 1A-1, Rule 56(e) (2003).
"`The standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law.'" McGuire v. Draughon, ___ N.C. App. ___, ___, 612 S.E.2d 428, 430 (2005) (quoting Bruce-Terminix Co. v. Zurich Ins. Co., 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998)). "Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party." White v. Consolidated Planning, Inc., 166 N.C. App. 283, 296, 603 S.E.2d 147, 157 (2004) (citing Garner v. Rentenbach Constructors, Inc., 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999)), disc. review denied, 359 N.C. 286, 610 S.E.2d 717 (2005).
Plaintiff argues first that the trial court erred by granting summary judgment on his claim of fraud. We disagree.
"The essential elements of fraud are: `(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" Rowan County Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (quoting Terry v. Terry, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974))).
"In order for defendants to prevail on their motion for summary judgment, they did not need to negate every element of fraud. `If defendant effectively refutes even one element, summary judgment is proper.'" RD&J Props. v. Lauralea-Dilton Enters., LLC. 165 N.C. App. 737, 745, 600 S.E.2d 492, 498 (2004) (quoting Ramsey v. Keever's Used Cars, 92 N.C. App. 187, 190, 374 S.E.2d 135, 137 (1988)).
As discussed above, the "essential elements of actionable fraud" include a "[f]alse representation or concealment of a material fact . . . which does in fact deceive[.]" Ragsdale, id. at 138, 209 S.E.2d at 500 (citation omitted) (emphasis added). If plaintiff fails to offer any proof of deception by or reliance on the alleged misrepresentation, his claim for fraud must be dismissed. See Godfrey v. Res-Care, Inc., 165 N.C. App. 68, 85, 598 S.E.2d 396, 407-08, disc. review denied, 359 N.C. 67, 604 S.E.2d 310 (2004).
In the instant case, plaintiff alleges no "false representation or concealment of a material fact" other than defendants' alleged state of mind at the time the settlement contract was signed. Plaintiff asserts that, at the time defendants signed the settlement contract, they were consciously planning to breach the agreement. In this regard:
It is the general rule that an unfulfilled promise cannot be made the basis for an action for fraud. The rule, of course, is otherwise, where the promise is made fraudulently with no intention to carry it out, and such promise constitutes a misrepresentation of a material fact[.]
Davis v. Davis, 236 N.C. 208, 211, 72 S.E.2d 414, 415 (1952) (citations omitted).
We conclude that, even assuming arguendo that plaintiff's evidence raises a genuine issue regarding defendants' good faith in entering into the settlement contract such that a claim for fraud might be sustained, the record contains no evidence that plaintiff believed, relied on, or was deceived by defendants' representations. Instead, the circumstantial evidence uniformly demonstrates the parties' mutual suspicion and distrust of each other. Plaintiff's first lawsuit against defendants asserted claims of fraud and unfair and deceptive trade practices, and thus alleged that defendants were deceitful. Also, plaintiff's Exhibit 2, a record of email correspondence between the parties' counsel, includes many representations by counsel that plaintiff did not trust defendants, including the following:
(26 March 2001) AmerLink asked whether Mr. Keyzer would be willing to accept payments over time, and Mr. Keyzer agreed to that as long as he was given adequate security[.]. . . . To avoid any shenanigans of the kind . . . . AmerLink has pulled in the past, Mr. Keyzer would also like an immediate supply of postdated checks from AmerLink[.]
(26 March 2001) [Mr. Keyzer] is still willing to settle the case on . . . [terms that] include[] adequate security for the money[.] . . . He has heard too many horror stories about AmerLink to trust it without such arrangements, he told me several times.
(28 March 2001) Why should Mr. Keyzer rely on AmerLink's commitment if [Spoor] will not even stand behind it personally?
(30 March 2001) . . . I think that Mr. Keyzer has no confidence in AmerLink carrying out any commitment to make payments over time[.]. . . . We have never trusted AmerLink to carry out its commitment to the settlement agreement . . . which is why we insisted on the security for the deferred payments[.]
(30 March 2001) [I]f Mr. Keyzer were to accept deferred payments he would require security for the payments and that security would need to include both [Spoor's] personal guarantee and not dismissing the lawsuit until all payments were made[.]
(emphasis added).
A plaintiff's mistrust of defendant is some evidence that the plaintiff was not deceived by a defendant's misrepresentation. In Broughton v. McClatchy Newspapers, Inc., 161 N.C. App. 20, 588 S.E.2d 20 (2003), this Court upheld award of summary judgment for defendants of whom plaintiff previously had expressed suspicion:
Plaintiff further contends that defendants committed fraud and misrepresentation by telling her that the article would be `sympathetic' to her interests. . . . In plaintiff's deposition, however, she stated that: `I've made it a policy . . . to never talk to anyone who works with The News and Observer, to avoid them socially, have nothing to do with them[.] . . . I've learned that people  especially people who work for The News and Observer  lie glibly.' Based on plaintiff's own statements, she did not rely on any statements that might have been made by defendants. Because an essential element is missing from plaintiff's claim, summary judgment was proper.
Id. at 31, 32, 588 S.E.2d at 29 (emphasis added). As in Broughton, plaintiff herein expressed distrust of defendants. Additionally, the general circumstances, as established by this record, show very clearly that plaintiff did not trust defendants and did not rely on their representations. Moreover, plaintiff offered no direct evidence of his reliance on the alleged misrepresentation by defendants. Indeed, plaintiff offered no sworn statement averring his reliance on, or deception by, any representation by the defendants. In short, none of the record evidence suggests plaintiff "was deceived" by defendants' alleged misrepresentation of their intent to comply with the settlement contract.
The evidence fails to demonstrate the existence of any issue of fact concerning plaintiff's deception by defendants. Accordingly, this assignment of error is overruled.
Plaintiff also argues that the trial court erred by granting summary judgment for defendants on his claim for unfair or deceptive trade practices. We disagree.
N.C.G.S. § 75-1.1(a) (2003) makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "Under section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act. Egregious or aggravating circumstances must be alleged before the provisions of the Act may take effect." Becker v. Graber Builders, Inc., 149 N.C. App. 787, 794, 561 S.E.2d 905, 910-11 (2002) (citing Branch Banking and Trust Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992), and Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989)).
In the instant case, defendant Richard Spoor (Spoor), signed the settlement contract both as representative of AmerLink, and as personal guarantor of the debt owed under the terms of the contract. Plaintiff asserts that Spoor executed the settlement contract, but had no intention of making the payment required by its terms, and thereby misrepresented defendants' "state of mind." Plaintiff also argues that defendants engaged in other "deceptive" practices. We conclude that plaintiff failed to present evidence raising a genuine issue of material fact on the issue of unfair or deceptive trade practices.
During discovery, Spoor was twice deposed and questioned about defendants' execution of the settlement agreement. His testimony included, in relevant part, the following:
SPOOR: . . . I agreed to pay him two hundred thousand dollars; he agreed that he wouldn't discuss anything about the contract. I was prepared to pay him the other hundred and fifty until I found out he'd breached the contract. We made preparations . . . to pay the hundred and fifty.
PLAINTIFF'S COUNSEL: What preparations did you make?
SPOOR: Setting aside the hundred and fifty thousand, hundred and sixty-two thousand dollars [including interest].
. . . .
PLAINTIFF'S COUNSEL: When did you discuss it?
SPOOR: From the time we were obligated, September 12 I guess it was, up until the date it was due.
. . .
SPOOR: . . . [O]ur objective was to pay you on the day that the monies were due. . . .
SPOOR: Well, you know, we entered into this settlement in good faith and as far as we're concerned we've remained faithful to what we agreed on. . . .
We conclude that Spoor's testimony shifted the burden to plaintiff to produce evidence showing a genuine issue of material fact on the issue of whether defendants intended to make the final payment under the settlement agreement.
Plaintiff's contention that defendants "falsely represented" their intention to honor the settlement contract is primarily based on allegations that: (1) defendants conducted an investigation to determine whether plaintiff was complying with the confidentiality clause of the settlement contract, in part because Spoor held the belief that plaintiff's breach of confidentiality might mean that defendants did not have to make the second payment; (2) certain aspects of defendants' bookkeeping and corporate decision-making were not the best business practices in that Spoor consulted only his attorneys about the settlement, and failed to properly record the debt in AmerLink's financial records; (3) defendants later filed a claim that Keyzer had violated the confidentiality clause, and a motion to dismiss Keyzer's refiled claims against defendants; and (4) defendant's "pattern" of fraud, consisting of another lawsuit years earlier, speculation about the nature of Spoor's previous disability claim, and the North Carolina Attorney General's request that AmerLink add certain language to its sales agreements.
We conclude generally that the alleged acts do not constitute unfair or deceptive trade practices. We conclude further that: (1) neither Spoor's view on legal implications of a breach of contract, nor defendants' investigation of plaintiff's compliance with the settlement agreement, is evidence of defendants' intention not to comply with the contract; (2) defendants' business practices do not bear on their intention to comply with the settlement contract when it was signed; (3) plaintiff's allegations fail to show either a "pattern" of previous misconduct or evidence of bad faith existing at the time the settlement contract was signed; and (4) the merits of defendants' other legal filings do not tend to show defendants' state of mind when they executed the agreement.
We conclude that plaintiff failed to present evidence raising a genuine issue of material fact as to his claims of fraud or unfair or deceptive trade practices, and that the trial court did not err by entering summary judgment in favor of defendants on these claims. Accordingly, the trial court's order is
Affirmed.
Chief Judge MARTIN and Judge TYSON concur.
Report per Rule 30(e).